UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

        Plaintiff,

v.                                                                                                      Crim. No. 12-123(1) (JNE/JJG)
                                                                                                        ORDER

Bryant Duane Griffin,

        Defendant.

Defendant Bryant Duane Griffin was charged with being a felon in possession of a firearm for events that occurred on a Metro Transit bus on March 25, 2012. On September 14, 2012, a jury found Griffin guilty. Griffin's attorney subsequently filed a motion for a new trial, and Griffin filed a pro-se motion for judgment of acquittal. For the reasons stated below, the Court denies both motions.

        **I.**        **Motion for a New Trial**

Griffin moved the Court to grant him a new trial pursuant to Federal Rule of Criminal Procedure 33(b)(2), arguing that the Court should have excluded certain portions of a case agent's testimony and the Court should have granted Griffin's request for a standing objection to that testimony.

At trial, the government called Special Agent Martin Siebenaler of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the case agent, to testify. Agent Siebenaler worked for the ATF for 11 years. He testified that he examined the firearm connected with this case—a Beretta model 3032 Tomcat, .32-caliber pistol—which was admitted as an exhibit. After being asked how the Berretta operates, Agent Siebenaler testified and demonstrated that one way to operate the weapon was to "rack" or "slingshot" the slide to strip one bullet from the magazine and put it into the chamber. (Dkt. 64 at 17.)

1

The government then played several clips from a surveillance video taken by security cameras on the Metro Transit bus during the relevant time on March 25, 2012. Before playing the first clip, the government asked Agent Siebenaler to explain what was in the first clip, to which Agent Siebenaler replied, "Clip 1 is the defendant getting on the bus along with other passengers of the bus . . . ." (*Id.* at 31.) The government played the clip and periodically asked Agent Siebenaler to describe Griffin's actions. Agent Siebenaler identified Griffin when Griffin entered the bus and noted where Griffin sat on the bus. Before playing the second clip, the government asked Agent Siebenaler to describe what would occur, and Agent Siebenaler stated that Griffin "will begin to engage the female on the left side of the screen." (*Id.* at 31.) Griffin objected, arguing that Agent Siebenaler's testimony invaded the province of the jury by interpreting what was happening in the video. The Court overruled the objection, noting that Agent's Siebenaler's testimony was helpful to the jury. Griffin then asked for a standing objection. The Court replied, "No, my ruling is explained. And if you have a different objection, you should make it at such time as it would be relevant. But the witness may help elucidate the material on the screen to the extent that he's able." (*Id.* at 32.)

Agent Siebenaler then identified the other individuals in the video and noted that at some point, Griffin's "focus begins to be more involved" with a man on the video. (*Id.* at 33.) The government asked if Griffin did anything with his hand, and Agent Siebenaler testified that Griffin's left hand, which had been in his left pocket when he boarded the bus, "came out of that left pocket with a black smaller object. It looked like the size of his palm." (*Id.* at 34.) Asked about the motion Griffin made with his hands, Agent Siebenaler testified: "The left hand was joined with the right hand, hand over fist, kind of an orientation similar to the sling shot effect that I described before. I believe it was that action quickly made and then the gun was put low

2

and underneath his left thigh before going back into the pocket." (*Id.*) The Court then stopped Agent Siebenaler's testimony and asked, "Mindful of the need to have the evidence come from the video itself, did the witness just describe something that already did happen on the screen or that is going to happen?" (*Id.*) After Agent Siebenaler said that he had described something that had just happened, the Court had the government replay a portion of the video. Continuing to a different portion of the video, the government again asked Agent Siebenaler to describe what would happen in the footage. Agent Siebenaler replied, "Mr. Griffin again will put the left hand into that pocket. You'll see a black object about the size of his palm, and you'll see a repeat of that first action where the right hand comes over the top to join the left. And the two hands kind of move in the opposite direction unique, in my opinion, to the action needed to chamber a round in this gun." (*Id.* at 35.) Asked about the significance of the two motions, Agent Siebenaler testified that because of the way the Beretta is made, those two motions would result in two bullets being placed in the chamber, and he testified that the Beretta recovered on the Metro Transit bus was jammed because it had two bullets in the chamber.

The government then asked Agent Siebenaler to describe what would happen in the last clip. Agent Siebenaler stated that the video showed that police officers arrived on the scene. He testified, "As Mr. Griffin also looks out the window after a brief pause, you'll see the phone quickly go to the right hand. His left hand now being clear and going in that left pocket. So they come out of that pocket, and go behind below the line of the seat that he's sitting in and out of view." (*Id.* at 39.) Before Griffin cross-examined Agent Siebenaler, the Court stated:

> Members of the jury, when we have a tape, either an audiotape or a visual tape, the evidence obviously is the tape and what you hear. And if someone else testifies to something you don't hear, it's different from what you hear, obviously, your perceptions of the evidence control. And the guidance is to help you to the extent it helps you make sense of what you see. But as I

3

>said at the beginning and have said over and over, the evidence is the exhibits.

(*Id.* at 40.)

Federal Rule of Criminal Procedure 33(a) allows a district court to "vacate any judgment and grant a new trial if the interest of justice so requires." "The trial court has wide discretion in deciding whether to grant a new trial in the interest of justice, but the authority to set aside a jury verdict and grant a new trial should be exercised sparingly and with caution." *United States v. Nambo-Barajas*, 338 F.3d 956, 961 (8th Cir. 2003) (quotations omitted). "Unless the district court ultimately determines that a miscarriage of justice will occur, the jury's verdict must be allowed to stand." *United States v. Campos*, 306 F.3d 577, 579 (8th Cir. 2002).

With his experience on the ATF and with the Beretta firearm, Agent Siebenaler was certainly qualified to testify as an expert about the firearm and was qualified to offer his opinion about the significance of Griffin's hand motions as they related to placing a bullet in the firearm's chamber. *See* Fed. R. Evid. 702 (allowing "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education" to offer an opinion). But Griffin did not object to that portion of Agent Siebenaler's testimony at trial, and he does not challenge it now. Rather, Griffin argues that Agent Siebenaler's mere descriptions of what was depicted in the video constitute improper lay opinion testimony. Griffin points to *United States v. Peoples*, where the Eighth Circuit determined that a district court erred when it allowed a case agent to testify about the contents of recorded phone conversations—giving her opinion both on coded language and on "plain English words and phrases" and offering "a narrative gloss" on the conversations—because the case agent neither personally observed the events recorded in the conversations nor heard the conversations as they were recorded. 250 F.3d 630, 639–41 (8th Cir. 2001). But in his motion, Griffin does not pinpoint any specific portion of Agent Siebenaler's

testimony where Agent Siebenaler did more than merely describe what was evident to anyone watching the video.[1] And although Agent Siebenaler only offered descriptions, his descriptions helped the jury understand what would happen in a video that showed multiple individuals interacting with each other and directed the jury's attention to the relevant portions of the video that showed Griffin's hand movements. An analogy from the world of televised sports might be a football announcer saying, "And you can see the ball being handed off here . . . ." An accompanying telestrated circle identifies the relevant portion of the screen. The circle and the statement are not an "opinion," but they help the viewer focus on the relevant portion of the screen in order to see for himself. Furthermore, the Court meticulously reminded the jury that the evidence was the video itself. For example, the Court stopped Agent Siebenaler's testimony at one point and noted that it was "[m]indful of the need to have the evidence come from the video itself." (Dkt. 64 at 34.) The Court also gave a limiting instruction informing the jury that the evidence was the video and that the jury's perceptions of the evidence controlled. Therefore, Griffin has not shown that he was injured in any way by Agent Siebenaler's testimony and he consequently cannot show that the interests of justice require a new trial.

Griffin also argues that the Court should have allowed him to have a standing objection to Agent Siebenaler's testimony. Griffin argues that not allowing the standing objection "puts counsel in the unpleasant position of either having to repeatedly object to each question-and-answer or, as the defense did here, letting it go and hoping the record is sufficiently preserved."

---

[1] Although Agent Siebenaler consistently referred to the object in Griffin's hands as a "black object" or a "black smaller object," he did at one point refer to it as a gun. (Dkt. 64 at 35 ("I believe it was that [sling shot] action quickly made and then the gun was put low and underneath his left thigh before going back into the pocket.").) Immediately, the Court asked the government to replay part of the video because it was "[m]indful of the need to have the evidence come from the video itself." (*Id.*) The Court also gave an instruction at the end of Agent Siebenaler's testimony that the evidence was the video.

(Dkt. 58-1 at 4.) But the objection Griffin sought to be a "standing" one was too broad to put opposing counsel or the Court on notice of what aspect of the testimony he objected to. Agent Siebenaler was indisputably qualified to testify about the motions necessary to prepare the Beretta for firing and about the fact that the gun would jam if a bullet is not ejected from the chamber before a second "racking" occurs. Griffin does not complain of the aspect of Agent Siebenaler's testimony that was expert testimony. In contrast, at other times the testimony stated the obvious and did not involve any interpretation of Griffin's motions. It was at such a point that Griffin interposed his objection. If ever the witness had said something that Griffin believed was misleading or an improper opinion, that would have been a different objection—one that was not made then and is not complained of in this motion. For all these reasons, the Court denies Griffin's motion for a new trial.

## II. Motion for Judgment of Acquittal

Griffin filed a pro-se motion titled "Motion for Judgment of Acquittal," alleging that the Court lacked jurisdiction, his counsel provided him ineffective assistance, and some of his statements were inadmissible because he was not given his *Miranda* rights. Under Federal Rule of Criminal Procedure 29, a court may enter a judgment of acquittal for "any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a).

> A district court has very limited latitude in ruling upon a motion for judgment of acquittal. A motion for judgment of acquittal should be granted only where the evidence, viewed in the light most favorable to the government, is such that a reasonably minded jury must have a reasonable doubt as to the existence of any of the essential elements of the crime charged.

*United States v. Bennett*, 956 F.2d 1476, 1481 (8th Cir. 1992) (quotation omitted).

Griffin never argues that the government failed to prove an essential element of the crime. The arguments he does make seem more appropriate for a motion for a new trial, but in

6

any context, the arguments are without merit. Griffin first states that the Court "lacked jurisdiction." But the Court clearly had subject-matter jurisdiction over Griffin's federal criminal prosecution. *See United States v. White Horse*, 316 F.3d 769, 772 (8th Cir. 2003) ("[S]ubject-matter jurisdiction in every federal criminal prosecution comes from 18 U.S.C. § 3231 . . . ." (quotation omitted)). Second, Griffin argues that the recordings of his telephone calls from Hennepin County Jail to his fiancée should not have been admissible because he had not been given his *Miranda* rights. "*Miranda* warnings must be given before a suspect's statements made during custodial interrogation may be admitted into evidence." *United States v. Ochoa-Gonzalez*, 598 F.3d 1033, 1038 (8th Cir. 2010). "Interrogation includes not only express questioning by an officer, but also any words or actions that police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.* (quotation omitted). Here, *Miranda* is a nonissue because there is absolutely no evidence that Griffin made his statements in response to interrogation by police officers. Finally, Griffin argues that he received ineffective assistance of counsel because his attorney failed to object to the admission of Griffin's recorded statements. To succeed on such a claim, a defendant must show deficient performance and prejudice. *Alaniz v. United States*, 351 F.3d 365, 367–68 (8th Cir. 2003). But a defendant is not prejudiced by "his attorney's failure to make a meritless argument." *New v. United States*, 652 F.3d 949, 953 (8th Cir. 2011). Here, Griffin's *Miranda* argument is meritless and therefore he has no ineffective-assistance-of-counsel claim.

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant's motion for a new trial [Docket No. 58] is DENIED.
2. Defendant's motion for judgment of acquittal [Docket No. 60] is DENIED.

Dated: November 2, 2012

                                                         s/Joan N. Ericksen
                                                         JOAN N. ERICKSEN
                                                         United States District Judge